I'm going to stay seated if that's all right, that's fine, Kelsey. I'll move the microphone a little bit closer to you. Thanks. Sure. Let me know if that's not okay. Troy Watson was found guilty of residential burglary after a jury trial and he was sentenced to 30 years imprisonment. In my brief I raised an issue of ineffective assistance at trial because it appears that the defendant's public defender, Miss Lee, lacked an understanding of the DNA evidence in this case. And this was critically important in this case because the state had no other evidence against my client. There was nothing linking him to the crime except this DNA evidence. Under this case's circumstances, it was very important that defense counsel had an understanding of DNA evidence and she should have presented further evidence to the jury. What other evidence should she have presented to the jury? She should have presented other evidence to explain and educate to the jury why the DNA found on the window to the home in this case was not actually a match to my client. It was similar and it was consistent with his DNA. Is the issue the seven locusts or is the issue the statistical significance? I think it's both in this case. But primarily the loci wasn't discussed adequately. She filed a motion for a directed verdict and argued that to the court that the seven loci match was not sufficient to convict. She made that argument. I know it's not in your brief, but she did move for a directed verdict and made that argument to the court, correct? That's not the argument. Excuse me. Actually that she made. I don't think that there is. And I mean that's the reason that I didn't raise reasonable doubt in my brief because I think that it's possible that a jury could become convinced with seven loci match. If all of this loci that were found matched somebody at every single one of the seven loci, perhaps a jury could be convinced beyond a reasonable doubt. In this case, however, there were six other loci that didn't match. I beg to differ with you. That's not what the testimony was, that there were seven. There were locations for seven loci, not 13. He was not excluded on the other, which were there was no profile for. He was included in the profile where there was for the seven, correct? The state's expert, Mr. Aper, testified that he did not find information in six of the loci that he tested. He normally tests 13. He didn't. I don't. She didn't ask him why he didn't find information. It was a big enough, two and a half nanograms. Sounds to me as a non-DNA expert like a teeny tiny little bit of evidence, but it was plenty of evidence for there to be 13 loci. I don't know why he didn't find information at those other locations on why those alleles weren't found. I don't know if he didn't take the time to look for them. If he thought seven, good enough, I'll go with this. I don't know where that DNA went. There was enough there for there to be 13 loci of information. How much responsibility does your client share for the trial strategy and the decisions that counsel made by his pretrial statements and conversations with her, where he told her he did it, that he wanted to take the stand and confess, and then ask the jury for forgiveness? And he did so all the way up until the day of trial. How much responsibility does he bear for that? Would you mind if I disagree with you, Your Honor? He had not made up his mind before trial if he was going to testify. And according to the record, the record states that he told her that if the spirit moved him, he was going to testify. And so he ñ and that's what he ñ they were ñ the record provides evidence about things that happened after the state presented its case about discussions between counsel and her client. Before trial, he was not interested in talking. He never said ñ there's nothing ñ you know, he didn't give a statement to the police. He did not confess to anybody before trial or during trial. It was after the state had rested that counsel started talking to him about testifying, as I recall. Am I correct? He waived attorney-client privilege and then introduced the conversation that he had with Ms. Lee, several conversations, which he brought in both Mr. Light and Mr. Perry to try to talk him out of this strategy, correct? I understand that one of them was simply as a prover. And Mr. Light testified briefly that he told him that he didn't think it was a smart idea to testify based on his knowledge. Mr. Light and Mr. Perry also testified about the content of the conversation, that he wanted to take the stand and ask the jury for forgiveness. Isn't that what he told them? I think Mr. Light's testimony was much briefer than Mr. Perry's, but it was along those lines. I don't disagree that ñ And what about the notes that he introduced, the defendants' exhibit number three, which contained the statement that he was there, that he did it, but it was a sin within him that did the crime? And then he introduced that. I think that those were simply general statements that he sinned. And he's very convinced that he, more than most people perhaps, he believes he is a sinner. And he allowed his religious beliefs perhaps to enter this case more than most defendants would. His attorney, it seems clear, had already told him that he was guilty. She told him that his DNA matched that found at the crime scene. So with Ms. Lee telling him that he was guilty, and he'd been in jail at this point for a long time. Where's the evidence that she is the one who told him he's guilty? There's no evidence of that. She said she told him that when she testified, that she told him that that was one of her reasons why she told him not to testify, because his DNA had been found at the crime scene. And I think that this is actually an example of how she didn't understand the evidence. Just because someone's got a seven low C match does not mean that your DNA is at the crime scene. Seven low C, as we know for sure from the Arizona study, means that you might have been at the crime scene. It doesn't mean that your DNA was there. The Arizona information, the search that was done on the database there, is probably the most compelling evidence we have that it may not have been his DNA that was there. That many people's DNA matches at seven locations. Can you please address the issue of prejudice under the Strickland, in the second prong of Strickland, whether or not there's prejudice here, and whether or not, along that line, whether or not your client actually admitted judicial admission, either in his statement of allecution, or by introducing certain evidence at the post-trial motion? A judicial confession has been, was defined by our Supreme Court in Green, as we all know,  But in Green, the defendant was only granted permission to speak on condition that he would tell the truth, and then he related facts concerning the robbery at question and the disposition of the money. He provided complete details. He explained. He set forth all of the facts. It was complete. Here, the defendant rather ambiguously said that he was guilty. He had sinned. His attorney took this as a confession. I don't know what his attorney heard from him. In this case, we don't have him saying, I went to the house on, I don't remember the name of the street, on First Street, and broke the window, removed the screen, entered the house, took out a television, removed some jewelry. There's nothing that is remotely like Green, where there was a judicial confession. Defendant 163, introduced at the post-trial motion, says, and it looks like they're on the notes, there's a quote beginning, it doesn't really, I'm sorry, the quote, quote, Sin within me, end quote, that did the crime. Now, by admitting these in evidence, the defendant was representing himself. He offered these notes in evidence. Is he not adopting them as his own? By offering them in evidence? I think he probably was, but again, they're not specific. They're ambiguous. They refer to sin and crime. I don't think that you can say the same thing. It's not like he knew. You can't take from that that he knew that this was a house where people lived, that this was a residence and not an abandoned building. All of the elements of the crime aren't there, so it's not sufficient, for example, to say that you could use this testimony at trial and find him guilty again. There isn't enough in his sentences, whether written or spoken. Are you suggesting that to constitute a confession, that the statement or conduct of the accused has to include all the elements of the offense? Or is it sufficient if the defendant just acknowledges guilt in the face of an accusation? It is not sufficient in the face of an accusation. His understanding of what he did wrong, like he thinks that it was some sort of breaking and entering, would have been adequate, or he indicated that was a possible thing that maybe there should have been a lesser-included instruction for. I don't know what he thinks he did, based on what we have. Your client, you mentioned earlier that he hadn't made confessions prior to trial, but the reality is that he did. He went out and confessed to all of his crimes and showed the police the hundred or so homes that he had broken into, but then made a decision not to take the plea agreement, correct? There was talk about him doing that. He did that? But it wasn't... Did he do that? The record doesn't actually say that he did it. It says there was talk about him doing it, but he did not accept that deal, so I presume that he may have. I can't... Didn't the detective testify that the defendant was released to his custody for two days where the defendant went around and showed the hundred or so homes that he had broken into? The defendant took him to houses that he knew of break-ins at, yes. And I thought there was some testimony about other people doing some of those break-ins also. So you accept then Judge Burke's question that the defendant is, for whatever it means, those notes, the defendant introduced that, and he's responsible for whatever that statement was. I don't see how if he's accepted... If someone writes a note and then he puts it into evidence, I really don't know how he's going to say... I mean, unless he puts something else in the record saying, I was insane when I wrote those or something, which I'm not saying can't be true. Do we know the context of when those notes were written? I don't think the record shows that. Did Ms. Lee testify that these notes were made and they're dated and they have... But I don't know the context. ...the date, the jail visit, and what the conversation was. I don't know that she was saying that they were prepared to go into evidence at trial or if she was saying that they were being prepared for her... I mean, they were for her records, but I don't know what she intended to do with them specifically, if she intended to use them in sentencing or what she intended to do. Well, she certainly did not intend to have the state or the court be privy to them because they were protected by attorney-client privilege until your client waived, correct? Absolutely. It may not have been his best move to do that, Your Honor, but it's what he did. However, my question was, do you know or does the record show the context of the conversation in which this note was written? The context of the note that he wrote? Exhibit number 3. I can't recall the context of when he... This might have been when he was talking to her, but I can't recall, Your Honor. Does the record show that one way or the other? I don't recall. You just don't recall? Okay. I would like to point out that this court did not find a judicial confession in Hunter, the other case that was cited for this judicial admission or judicial confession, and he admitted going along in that case. He admitted to some parts of that crime, but he, too, did not admit to the actual commission of the actual charged offense, which in that case was forgery. What about the statement at sentencing? Beyond what he said and what he did in the testimony and the exhibits he offered at the motion for new trial, at sentencing, didn't he initially tell the court, I'm going to tell the truth, and then in that statement say, I deserve whatever punishment you sent forth and probably more? Isn't that akin to what the defendant in Brown said when he said to the court at sentencing, I'm sorry? Isn't it the same thing? I'm sorry, I deserve. Aren't they basically the same thing? I think that you're on mute. You've seen numerous examples of people saying they were sorry at sentencing, apologizing to families, apologizing to their own family, to everybody they have hurt is not uncommon. Can you cite a case that says that, that the rule of judicial confessions does not apply to statements in elocution because defendants often get up and say, I'm sorry? Is there any case that says that? I don't know that there is a case that says that. I do think that it should be recognized, though, that that would have a very chilling effect if that became the rule, that people in elocution who apologize can never raise reasonable doubt. Most defendants who are making statements in elocution do so after consulting with their attorney, especially when you're facing a sentence like this, Defendant Watson. He had fired his lawyer. People undoubtedly- That's what happened, correct? Did he fire him? Well, yes, he discharged her, yes. People do things in consultation with their attorneys. Certainly they may or may not take that advice. Some do, some don't. I would say it's been shown. I'll tell you I'll have an opportunity again for rebuttal. Counsel? Mr. Jorgensen, may I please the court? Counsel? My name is Timothy Jamestine, and I represent the people of the state of Illinois. In honor of my time before you, I will show you why the defendant's conviction for residential burglary should be upheld by this court. Now, as to the first issue, the defendant here claims that his trial attorney, particularly Ms. Lee, his public defender, should have made a motion to suppress DNA evidence because it was only a partial 7 low-C match out of 13. There are two prongs to the Strickland test which are well known. One, that counsel's performance must be deficient, and two, that such deficient performance must be unreasonable to the extent that it's prejudicial to the outcome of the defendant's case. Both prongs of Strickland are not met here. Your Honors, as this court stated in People v. Jorgensen, decisions about which witnesses to call and which evidence to present ultimately rest with the defense counsel. Keith, this is not a questions trial strategy. Could you maybe move your argument to the prejudice prong? Well, Your Honors, as to the prejudice prong, I think it's very clear, as Justice Burke has stated, there was judicial confessions here. The statement in allocution that the defendant stated, and I don't want to belabor the point, but I think it's very poignant here to say what exactly the defendant's own words were. On page 799 to 800 of the record, he says, I know no matter what sentence you send forth is going to be less than what I deserve. On page 800 of the record, in the sense that in the past I have been able to justify my actions, I cannot do that today other than what I can believe in, and that is my life, Jesus Christ paying for my sins. Again, on page 800 of the record, I would ask for forgiveness for all those that I have harmed. All of these statements, particularly when viewed in light of the post-trial motion hearing. Let me ask you the question. Did you read the post-trial motion hearing before you wrote your brief? Yes, Your Honor. Why didn't you include any of those statements? Your Honor, there could have been some strategy from opposing counsel that that went to mental health and mental fitness because that was the big issue in the post-trial motion. And rather than getting into the argument that could potentially happen with Ms. Lee really stating what was the content of that conversation, instead of getting into that mental fitness health issue, I wanted to bring it to exactly what her point was and stay within that particular issue. These are the defendant's own words. They're not Ms. Lee's words.  These are the defendant's own words here in the statement of allocution that he harmed other people, that he – for Jesus Christ forgiving him for his sins, and that it was him who did this. Counsel, at that point, isn't it crystal clear that this defendant had a sheet a mile long? There was a myriad of people he could have been asking for forgiveness for. Your Honor – Is that a fair reading of that – the transcript? Your Honor, I would not say that. And the reason I would not say that is because he states in page 799 to 800 of the record, I know no matter what sentence – what sentence you send forth, it's going to be less than what I deserve. Do you honestly think the defendant believed that he was being sentenced only on this charge and not based on his prior criminal history? Absolutely, Your Honor. He was being – One residential burglary. He got 30 years? Your Honor, the criminal history that he had beforehand certainly had something to do with that as far as – And do you think that was in the defendant's mind? To some extent. I would concede to some extent. But we cannot say and separate ourselves particularly from reality and say that the defendant did not accept accountability for this particular crime in this particular case when he says, I know no matter what sentence you send forth, it's going to be less than what I deserve. He had already spent his time in jail. He had spent six years in DOC for one of his residential burglaries and 16 years in his – Weren't there other charges that were dismissed as a result of this case proceeding to trial? Yes, Your Honor. He had multiple pending cases at the time of the trial. Were those all dismissed? I'm sorry. And that didn't enter into the equation here? As far as the statements he made in allocution? Mm-hmm. Perhaps. But again, it would be speculative. I can't – It certainly would. I'm sorry. And you had a question? The other cases, the three other pending residential burglaries, the two thefts in possession of a motor vehicle, those were all dismissed after this? Yes, Your Honor. What he had, he pled to the one residential burglary for 25 years. I'm talking about what really happened. I'm sorry? Are you familiar with what actually occurred after the sentence was imposed in this case? Were the other cases dismissed? I believe they were, Your Honor. I don't know. I don't have a particular record site, but I would state that, yes, they were. They were all dismissed as a part of this particular sentence. But I don't know, particularly, I can't cite you to a particular part of it. So he's found guilty, and then the State just throws in that we're going to nally all these cases as long as we go to proceed to sentencing? Your Honor, I can't speak to it particularly because I don't have a record. You don't have any idea? So you don't know as you stand there what happened to those other cases, honestly? I do not. Okay. I would concede that point. Okay. But getting back to the main and plaintiff here, we're looking at an issue that has to do with prejudice and deficient performance. You said that the statement in elocution, it's speculative that perhaps the defendant was, when he made the statement, getting what I deserve, that perhaps he was talking about this case or perhaps he was talking about all the litany of other cases that the prosecutor read into the record before he spoke or everything altogether. I mean, is that really clear enough to constitute a judicial confession under Greene? Would Greene says a judicial confession consists of a plea of guilty to an indictment or some similar action or conduct in court? Absolutely, Your Honor. Even though we can speculate that he was talking about perhaps other things other than this one. I think the speculation would be geared towards more irrational alternatives. The rational alternative, when the defendant has a statement in elocution, that is his time to speak before the court for that case, for that sentence, for what he feels what should happen in that sentence. I was just in the hotel this morning in the Knox case. The defendant is saying, you know, I didn't do this crime, I didn't do this crime. Defendants in elocution know that that's their last time to address their trial court before their sentence is delivered. Surely, we cannot separate ourselves from reality to the extent that we think the defendant is talking about all his crimes. Could it be a possibility? Perhaps. But it is not a reasonable possibility. It is an alternative that does not dwell within the realm of rational inference. Here, what we see is the defendant knowing he was charged with this particular residential burglary, regardless of the myriad of other crimes that he had, which, again, you've mentioned. He was here for this crime and this crime he talked about. This crime he said, I've harmed other victims. This crime he said, Jesus Christ has to pay for my sentence. It is this crime he was talking about in elocution. As Justice Burkett said, we cannot state that a judicial confession must have a detail of every single element of every single crime to do so in order on absurdity. Surely, that is not the case here. When a defendant in a statement of elocution says, listen, I've harmed these people, and whatever sentence I get is going to be less than why I was served, we can make through rational inference, certainly, that the defendant was talking about the crime he was charged with, and he was confessing that he did that crime. The defendant was asking for leniency from the trial court. Counsel, is there any – I mean, just so I understand, is the State's position that a statement in elocution is limited to the offense for which he is being sentenced, and the defendant cannot speak about any other circumstances in his past? Certainly, the defendant can speak about other circumstances. So then why would we make a rational inference that he is only speaking about this offense? Because, Your Honor, it is the most rational alternative. It's the most rational equivalent to what the defendant is talking about. And if we put that with the statements he had in the post-trial motion, certainly there are some issues there that the defense could raise about mental health or the fitness that he was to stay in trial. But if we look at the record as a whole and the totality of the circumstances, certainly it appears the defendant is talking about this case and this crime. And for that reason, he was making a judicial confession. But before we even get to the prejudice problem strictly, the deficiency problem is to be addressed. And the deficiency problem, again, was not met here. As Justice Burkett stated at the beginning of the oral argument, what other evidence could the defendant's trial attorney have brought? Nothing, nothing. The defendant's trial attorney did every single thing that she could possibly do to make the jury aware of the truth. Can you point to any effective cross-examination of the State's expert? Absolutely. Page 527 of the record. Particularly, she states, what does this DNA evidence state? I can't quote it for you directly, but she asked the State's forensic scientist, Mr. Aper, does this conclusively match the defendant? His answer, no. So it could be related to other related individuals. Is that correct? Yes, it could. 527 of the record. As Justice Burkett stated earlier in oral argument, again, in directed footing. So that was – she asked a total of three questions, and you think that that was an effective cross-examination? Absolutely. The Supreme Court has long held – Actually, what she asked him is whether or not it would change his opinion if the proposed donor of the DNA was related. Those were her questions. And you believe that that's effective cross-examination? Absolutely. Okay. Absolutely, Your Honor, because what it gets to – Absolutely is enough. Go ahead. Move on with your argument. What the trier of fact understands is that other related individuals could be the donors. Was there any evidence, any inkling anywhere in this record that the defendant even had a twin brother or twin sister? Or was there any allegation anywhere in any record, any police report, that there was a family member at issue here? No, Your Honor. There was not. But nevertheless, the defendant's trial attorney does not have to go so above and beyond it and find all different types of relatives and state that these relatives have to be the – Yet that's what she chose to cross-examine on. Correct? Absolutely. She did. And he raised at least some issue for the trier of fact to determine, okay, whether there could have been a relative, whether there could have been a related individual who could have been the contributor for this partial love-see match. Again, a directed verdict. The defendant's trial attorney does that again and makes that argument. Again, in the closing argument on page 553 of the record, again, the trial attorney – This would be the closing argument where she called it a match? Where she – In closing, making her argument to the jury, she said, and you'll recall that this was a match? Yes, Your Honor. And that was effective? She did make that statement. Yes, she did. But conceding that point, I would still direct this, Ms. Cork, to the totality of that closing argument where she is arguing time and time and time again that the trier of fact has to consider that the only evidence that was there was the DNA, and the DNA was not directly conclusive to match the defendant. So while she characterized it as – And I'll accept your argument for this, but then she tells the jury, regardless of what I've just said, that's a match. Yes, Your Honor. She did – absolutely she stated that. But she also made that other argument to the trier of fact. We can't isolate one sentence or one phrase that this is a match and state that that somehow poisons or destroys the entirety, the context of what that closing argument entailed. The surrounding circumstances of that closing argument was that the defendant was not conclusively matched to the DNA found at the scene. And that was the only evidence. There were shoe prints, fingerprints, nothing else. No possession of property on him. And that is what she argued with trier of fact. That is a reason. To get back to your argument, she was using the DNA evidence to benefit him in terms of excluding him from the burglary tool that was used to pry open the window, correct? I'm sorry. Can you repeat again? She argued that he was excluded from the DNA profile found on the screwdriver. Yes, she did. She also argued that the shoe print that was found was not connected to him. Absolutely, absolutely. I mean if we look at the closing argument and we look at the totality of the circumstances, she was trying to show the trier of fact. And she did as good of a job as she could have done to exclude him from the scene, to show that he didn't have possession or there was an insubstantial but conclusive match with the fingerprints, DNA on the screwdriver. All of this goes to the point that she provided the defendant with reasonable performance. Her performance was certainly not deficient. And the defendant's citation is right as I addressed in my motion to strike. That decision is not even at this point readable on Westlaw. It's not a decision that this court can go to and it's not a decision that this court can rely on. But we can't also – we can rely on scientific documents that are cited in a case even though it's withdrawn. Certainly this court could, but an attorney giving reasonable performance is not required to give superhuman performance. An attorney could have done that perhaps, but that is not necessarily what the standard of reasonable representation would be. An attorney with more resources and more of a metropolitan area may be able to access DNA databases from Arizona and the like much more. Rockford is not in the middle of nowhere. Well, certainly it's not in the middle of nowhere, Your Honor, and that's a mistake. Would she have asked the state, pursuant to 115-6, for a database search to see whether or not the Illinois database contains profiles that also match the defendant? Yes, she could have. She did not do that. She did not do that. But, Your Honors, what I would point this court to and direct this court to is whether or not a defendant's attorney, whenever there is a DNA, which is increasingly more prevalent in cases. Whenever there's DNA found within a case that an attorney must file a motion to suppress, that an attorney must look into Illinois databases and create these statistics. And what do all these statistics show? At the end of the day, these databases show one thing, which was already elicited from cross-examination, directed verdict, and closing argument, that the defendant could not be the contributor. That's the – at the end of the day, that is what the particular evidence would show. Even with the database, it may be a more statistically impressive analysis. But at the end of the day, it all comes back down to one conclusion. The defendant may or may not be the contributor. That's what the trier of fact heard. That's what the trier of fact considered. I see my time is up. May I continue, sir? I just have one quick question. One of the – just to get back to one point. One of the reasons you didn't raise what happened at the post-trial motion as far as a lack of prejudice, one of the reasons you stated was because the defendant didn't actually make those statements in open court. Is that correct? Yes. He didn't actually state those. And also, I was a bit concerned with whether or not if I raised that. Because he didn't make those statements, the defense could then say that there's another issue that the State has now raised in their response brief that now we can reply to and say that there's a mental health issue and, therefore, we're putting another issue that could happen. You're not suggesting that you ignore an issue like a judicial confession because you're in fear that they're going to raise another issue, are you? Is that what you're saying? I'm saying that we – the State had enough with the statement in allocution, which I certainly believe shows his confession, that we didn't need to have that, which could potentially open more warrants. If it was a case where I was – What about the defendant's exhibit number three at the hearing? Is it a judicial confession when he introduces that at his hearing and this statement says – and it's a note that Ms. Lee wrote of what he was telling her on March 16th – that he did the crime, that he was there, the sin within me that did the crime. Again – Isn't that a judicial confession? Again, that's a note written by Lee on her jailhouse visit to the defendant prior to the trial. So, again, it would go to the same issues that Ms. Lee testified to in the post-trial motion, which is whether or not he was mentally fit to do it. It's not his particular writing. It's her notes from her case file about what the defendant said to her. What better way to show an actual judicial confession than the defendant's own words, which foregoes any type of issues that may be related to the post-trial motion? Certainly, perhaps in retrospect, even as courts do consideration to it, perhaps I would have been more proven to raise that issue in the post-trial motion in Defendant's Exhibit 3. I did not as a strategy reason because I felt pretty clearly that his statement in allocution pretty much sealed the deal for lack of a more eloquent term. Do you have any more questions from me? Are you aware of any cases where there's been a judicial confession found by adoption of someone else's writing or statements? I have not. Okay. I have not. Thank you. Thank you, Your Honors. Thanks. Do you wish to reply? I would like to reply briefly, Your Honor. Counsel misstated my argument, I believe, when he said that I thought that Ms. Lee was ineffective for failing to file a motion to suppress the DNA evidence. That's not my argument. I don't think that it was suppressible. I think that DNA testing, as counsel said, has become very much a part of the court scene these days, and it is powerful new evidence, and juries are very impressed with it. It has to be presented in a fair and reliable manner. And this is going to require that defense attorneys who have DNA evidence learn about DNA evidence, and Ms. Lee did not do that. And she doesn't have to know as much as some attorneys, but she needed to learn what the evidence in this case was. This was the only evidence against him. In this case, he was entitled to an attorney who could educate the jury about the evidence that they were hearing so that they would know how to take it. Seven low C match, if they're the wrong seven low C, it means nothing. As we all know, 99% of our DNA is all the same. So the jury needed to know what to do with this scientific evidence, and that's where Ms. Lee failed in her job. Let me ask you this question. The statements that we talked about from the post-trial motion, the notes that he introduced, where he tells Ms. Lee on the 16th that he was there, that he did the crime, it was a sin within him. And then later on to Mr. Light, which is the next page, that it was told Mr. Light and Ms. Lee that it was a sin within him that committed the crime. And the other conversations that he waived attorney-client privilege for, which were that he wanted to take the stand and confess. If we were to grant relief and reverse this case based upon ineffective assistance of counsel, don't all of these statements, the confessions, including the statement to the detectives, because he waived his protections under Supreme Court Rule 402, don't they come in on remand? I don't think that they do come in on remand. He was giving those for the purpose of talking to his attorney. He didn't make those statements as judicial confessions. They came in during a judicial hearing. He waived attorney-client privilege without qualification. Yes, and those are pieces of evidence that were created, whether they're relevant to an issue. I mean, there would have to be another hearing on the subject of the actual circumstances. Well, don't you have a professional obligation to address that in your briefs, that on remand, that these statements he confessed to all three lawyers, to the detectives, made an unqualified waiver of privilege? What do we do about a remand? Don't these statements come in? I think that the word confession is a loaded term, at the very least. A confession means that you've admitted to everything. That's how I interpret a confession. You might interpret a confession as enough that if I said he was there. So I don't think that you can just say, well, he confessed to somebody. I mean, that's why police are— The definition of confession is pretty straightforward. It's an acknowledgment of guilt that doesn't have to include the details. Well, it has to include enough details that if somebody says, I confess that I was there, that doesn't mean that I killed the dead body that's in the room. And I think that there has to be some details. I did the crime. That's not enough? That I did the crime? I did the crime doesn't necessarily mean that he took the TV or the jewelry. It means that he's acknowledging— Again, to get back to the question, aren't these statements all admissible on remand? I don't think that they are admissible because they are not judicial confessions. Judicial confessions would be— Whether they're extrajudicial or judicial confessions, it doesn't— The only distinction, the reason we make the distinction is because extrajudicial confessions are not inherently reliable. They have to be tested. But once they're offered in open court, whether they're outside or inside of court, how do we address this? I will have to give that some thought, Your Honor. I think that this, in my mind, this is not a judicial confession. He didn't admit to all of the evidence against him. And I don't see it as that. I would like to point out that there was nothing that would have stopped Ms. Lee, as you pointed out, from asking how many sudden low-C matches there are in the Illinois database. She could have inquired about the nine low-C matches. And she certainly could have at least questioned the state's expert to try and find out if he knew about less than full matches, if he had ever testified about less than full matches. And there are hundreds of people that would have matched this DNA evidence. And so the DNA evidence in this case was not sufficient, and it wasn't presented in a fair and reliable manner. And for that reason, we request that you remand the case for a new trial with different counsel appointed. Is there anything else, Your Honor? Any other questions? Thank you both very much. We'll stand at recess.